Parker, J.
The action is assumpsit against the Marblehead Social Insurance Company, for refusing to transfer 150 shares of stock in said company, originally belonging to Dudley S. Bradstreet and William Story; the property in which is alleged to have been legally transferred to the plaintiff, by virtue of the levy of an execution, to satisfy a judgment recovero'3 by one B. T. Reed against the said B. &f S., the said shares having been attached on mesne process, as security for the judgment which might be obtained. The defendants probably considered themselves merely as stakeholders, and without interest in the suit; and the action has accordingly been defended by Isaac Story, who claims property in these shares, by virtue of a sale and transfer made to him, previously to the said attachment, by the said Bradstreet, who assumed to act for himself and as attorney to said W. Story, this latter having been at the time absent in Europe, and who was his general partner in trade, but from whom he had not any letter of attorney, either general or particular. This transfer is found by the jury to have been bond fide, and for a valuable consideration; and the certificates which had issued from the company, acknowledging the payment of the instalments which had been made, were endorsed by Bradstreet and delivered over to * said I. S., who [*481 ] thereupon, before the attachment made by Reed, as aforesaid, gave notice to the officers of the company of this transfer to him, and that he relinquished an attachment previously made by him to secure a demand which he "had against the said B. df S. It appears in the case, that the shares were subscribed for by said Bradstreet in the name of B. S., which was the name of their firm, and that the subscription was intended for their joint benefit and concern, and that the instalments were paid from the joint *472 stock, of which the said Bradstreet had the management, his partnei having been absent, as before stated, and not having been consulted either about the subscription or the transfer.
Upon these facts, if the transfer to Tsaac Story should be deemed valid in law, or effectual as a lien upon the company, the plaintiff must fail in his action; because he would in that case have no property in the stock, the attachment under which he derives his title having been made after the transfer was executed.
The dispute is, in effect, between two creditors, both attempting to secure themselves from loss by acquiring this property; and the question before us is, Which is in the best condition, as it respects this particular action ? The defendant (we speak of the real defendant, Story) was the most vigilant, having acquired an inchoate lien upon the stock several months before Reed’s attach ment; but having changed his course of measures from an attachment to a voluntary transfer, the plaintiff, by virtue of Reed’s attachment and the consequent sale on the execution to him, had" a legal right to hold the property, if that .transfer should be found to be void.
The plaintiff’s objections are, first, that Bradstreet had no authority to act for his partner, Story, having no power of attorney from him, and that, as to one moiety of the stock attempted to be transferred, the property remained in the partners or in W. Story at the time of his attachment.
But we are of opinion that, as this was common prop-f *482 ] erty, *and may indeed be considered joint stock, as it was assignable in its nature, except under the restrictions contained in the charter, it was competent for Bradstreet to transfer the whole in payment, or as security of a joint debt; and that the delivery over of the certificates, with an endorsement upon them by Bradstreet, was a complete and absolute transfer of the whole stock to I. Story, as far as a chose in action could be transferred by law. Each partner has complete control over the partnership effects, with the power of disposing of them to the purposes of the copartnership.! The stock in question, being purchased for the joint concern, and paid for out of the common fund, must be considered as partnership effects, and as liable to the attachment of a creditor of the house, or to an assignment to a creditor for the purpose of paying a partnership debt.
f ADDITIONAL NOTE.
[One partner may bind another by a sealed contract, made in the usual course of business, if the latter previously authorize or subsequently adopt and ratify it, even ny parole. — Cady vs. Sheperd, 11 Pick. 400.
See Woodward vs. Winship, 12 Pick. 430. — Etheridge vs. Binney, 9 Pick 272 -F. H.]
*473 It was not necessary that this assignment should be made by deed. The delivery of the certificate, with an endorsement upon it, for a valuable consideration, was a sufficient transfer of the right to become a stockholder to the amount specified in the certificates. If this had been property which could not be assigned but by deed, the want of a letter of attorney from W. Story might deserve more consideration. But being transferable by common assignment, like a written promise not negotiable, and being, as partnership stock, assignable by one of the partners alone, we do not think that, because a bill of sale, purporting to be the act of both the vendors, but turning out legally to be the act of Bradstreet alone, was resorted to as the proper mode of assignment, the assignment is therefore invalid. Setting the bill of sale entirely aside, we think there is enough to show an assignment, which, according to decisions in this Court, will protect the property in the hands of the purchaser against a subsequent attaching creditor.
But the objection principally relied on is, that, by the statute in corporating this company, the shares are not to be transferred until the whole subscription is paid in.
#If this is to be considered as a general prohibition [ *483 ] of transfers, it will apply as much to the plaintiff’s claim as to that which is opposed to him. But we apprehend that such was not the intent of the legislature. To prevent speculation in the scrip, and to continue the responsibility of the original subscribers in case of loss beyond the funds actually vested, this provision was introduced. The general statute, providing for the taking of shares in the stock of incorporated companies to satisfy debts, subjects all the interests of members of such corporations to attachment and levy; and we believe that a transfer, made by a debtor to his creditor to secure a debt, was not intended to be effected.
By this provision the transfer cannot be complete and effectual to all purposes, until the full amount is paid in; but the creditor may be substituted for the debtor, and may acquire the right, upon payment of the residue of the subscription, to have the transfer entered upon the books, and to have a certificate of his shares.
It is sufficient, in the case before us, that Isaac Story has the equitable interest in the shares; and that the company would be justified in issuing certificates to him. For the consequence is, that they are under no obligations to do the same thing to the plaintiff He has not, therefore, maintained his action.

Judgment according to the verdict.

ADDITIONAL NOTE.
[Though the by-laws of a corporation require that all transfers of shares be made in the treasurer’s book, yet a deed, accompanied by a delivery of certificates, will pasa *474 (.he property, even against a creditor of the vendor who attaches it, without notice of the sale either to him or the treasurer. — Sargent vs. Essex, &c. 9 Pick. 204.
It seems, the purchaser cannot claim a dividend or a certificate from the corporation, without first applying to have the transfer made, according to the by-law Ibid.
By statute 1808, c. 65, the proprietor of any share in a manufacturing corporation might alienate the same by a deed under his hand and seal, acknowledged before a justice, and recorded by the clerk of the company. Held, a deed not recorded was so far effectual as to render the grantee liable for a debt of the corporation. — Eames vs. Wheeler, 19 Pick. 442. — F. H.]