The opinion of the Court was drawn up by
Parker C. J.
The present plaintiffs are the legal owners of the two shares on which the dividend is claimed. They were original subscribers and have a right to the dividend, unless the bank can show a right to retain it and appropriate it to their own use. They set up such a right under the statute incorporating the bank, and under a by-law made by the corporation. The general objection under the statute is grounded on the provision contained in it, "that the cap~taI stock of said bank shall not be sold or transferred, but shall be holden by the original subscribers thereto, for and during the period of one year from the time of passing this act." It appearing in the case that the plaintiffs had made a transfer of their two shares to Ball & Davis before the expiration of the year, and that Ball & Davis had assigned the same to the Provident Institution for Savings also within the year, for whose benefit this action is brought, it was considered by the Court of Common Pleas that both these transfers are void, and so that the action could not be maintained, notwithstanding the defendants had so far admitted the assignment to the Provident Institution as to receive of their agent the last instalment of 25 dollars on each share ; intimating to them only, that the transfer would not be valid for two or three months to come from the time this instalment was paid in ; which was on the 28th of September, 1825, the year not expiring until the 26th of February, 1826.
Certainly the transfers were not valid in law when they were made, and the bank could not legally then have issued certificates to the assignees, or have admitted them to be the owners on the books ; but we cannot discern why the assign inent did not equitably pass the property, as well as the indorsement of any paper not negotiable by law, the object of the legislature being to prevent a change of responsibility to the bank or the public, and to prevent speculation in the stock for a limited period; not to lock up this property against the creditors of stockholders, or to deprive them of the power of voluntarily paying their debts with it. The transfer, as we understand the statute, is not made null and void ; it is merely inoperative during the prohibited period ; so that the original *330 subscribers are to stand as owners in regard to the bank, and in reSar(^to such creditors as may have occasion to attach the property as theirs, they not knowing of any equitable lien upon it in favor of any other person.- “ The stock snail not be sold or transferred, but shall be holden by the original subscribers thereto for and during the period of one year.” Can it be supposed that the legislature intended it should be holden free from their creditors for that period ? If so, they would have provided a safe retreat for debtors for any sum which they may have subscribed to the bank. No, the sole object was to cure a supposed evil, that of subscribing to bank stock without intention to become stockholders, but for the purpose only of speculating upon the rise of shares ; and this was done to a considerable degree by an interdict upon their transfer for a year. If more was intended, all such transfers would have been declared void to all intents and purposes, and then the singular phenomenon would have existed, of a legal disability in the debtor to appropriate his money to the payment of his debts. It cannot be disputed that the plaintiffs’ right to these shares might have been attached and sold under the statute which authorizes such a disposition of such property, nor can it be doubted that if the plaintiffs had made a direct assignment to the Provident Institution as collateral security for money borrowed to pay the last instalment, the equitable interest would have passed.[1] Shall the intermediate sale to Ball & Davis make a difference ? We think not; for the assignment to them, though it gave them no right to demand certificates or in other respects to be considered owners during the year, yet we think passed the equitable interest, which after the year might be converted into legal property. In the case of Quiner v. Marblehead Soe. Ins. Co. 10 Mass. R. 476, principles analogous to those which present themselves in this action were discussed and decided. The statute incorporating that company provided, that no transfer should be permitted or be valid until the whole stock was paid in. A transfer was made to Isaac Story before the whole stock was paid in, to satisfy a debt which two of the original subscribers owed to *331 him. This was held to be an assignment in equity, which entitled Story to the certificates after he should have paid what remained due on the stock. The difference between the two cases is, that Isaac Story was an antecedent creditor of Bradstreet & Story, the assignors, but here it does not appeal' that Ball & Davis were any thing but purchasers ; but we think the only effect of this circumstance is, that Ball & Davis, and those claiming under them, could not become owners for the ) ear, during which time the shares remained to all legal purposes the plaintiffs’ property, liable for their debts to creditors without notice. The St. 1804, c. 83, which provides for the attachment of shares and interests in incorporated companies, would, we think, authorize the attachment of shares not filled up, for it speaks of the amount of interest as distinct from the shares which any debtor may have in the company stock.
What fair or legal objection then can be made to the plaintiffs’ recovery of the dividends upon their shares, to the use of those to whom they have been equitably transferred ? There is no objection to the capacity of the plaintiffs, for they are the legal owners of the shares. Have the bank any lien or equitable interest to set up in defence ? They do in truth claim to hold these shares and the product of them, on account of a loan made to the plaintiffs of a sum beyond the value of the shares, by virtue of a by-law which subjects to a lien the stock of all members who shall owe any thing to the bank. We need not, in order to decide this case, go into the consideration of the validity of this by-law against any creditors of a stockholder, though it may be worth inquiry by the corporation, whether such a by-law can be of any avail except between them and the debtor.[1] We suspect it is a first attempt, by a general declaration of this kind, to give themselves a preference over other creditors, without taking the usual means of pledge or transfer of the particular, stock they intend to hold.
But admitting the by-law to be operative under common circumstances, we think it ought not to avail in the present instance. The loan was made after notice by the Provident Institution of their claim to the shares, and after the defend *332 ants had received from that company the instalment due on the shares. They surely could not, under such circumstances, have lent the money on the faith of these shares. They look the usual security, notes with indorsers. They cannot resort to their by-law to strengthen their security, and on this ground certainly have no equitable claim.
For the foregoing reasons we are all clear that the verdict must be set aside, and a new trial granted at the bar of this court.

 See Sargent v. Essex Marine Railway Corp. 9 Pick. 204

 See Plymouth Bank v. Bank of Norfolk, 10 Pick. 454.